**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.**

MSP RECOVERY CLAIMS, SERIES LLC, and
MSP RECOVERY CLAIMS SERIES 44, LLC

        Plaintiffs,

v.

ACE PROPERTY AND CASUALTY
INSURANCE COMPANY, ACE INSURANCE
COMPANY  OF THE MIDWEST, ACE FIRE
UNDERWRITERS INSURANCE COMPANY,
and  ACE AMERICAN INSURANCE
COMPANY,

        Defendants.

_____/

## NOTICE OF REMOVAL

Defendants ACE Property and Casualty Insurance Company, ACE Insurance Company of the Midwest, ACE Fire Underwriters Insurance Company, and ACE American Insurance Company (collectively "Defendants"), pursuant to 28 U.S.C. §§ 1331, 1332(a)(1), and 1332(d) and 28 U.S.C. §§ 1441, 1446, and 1453, hereby remove to this Court the state court action described below.

## I.   INTRODUCTION

1.      On July 24, 2023, Plaintiffs' Second Amended Complaint (the "Second Amended Complaint" or "SAC") was deemed filed in the State Court. A copy of the Second Amended Complaint (attached to the Motion for Leave to Amend) is attached hereto as **Exhibit 1**.

2.      With the Second Amended Complaint, Plaintiffs for the first time allege:

- Plaintiffs have sent to Defendants written demands for payment on specific claims—which demands total more than $4.67 million;

- a putative class of "hundreds" of similarly situated members with "several thousand" claims;[1]

- a count seeking declarations that: Defendants must coordinate benefits for Medicare, in addition to Medicaid; and, Plaintiffs and Medicare and Medicaid Secondary Payers[2] are exempt from conditions precedent to lawsuits and other legal and proof requirements;

- a count seeking discovery from Defendants on Plaintiffs' now-identified claims related to Medicare for which they already allegedly sent written payment demands, in addition to other non-specified Medicare and Medicaid-related claims, so Plaintiffs can confirm these claims and seek damages.

3.      All requirements for removal under the Class Action Fairness Act ("CAFA") have been met, as set forth below.

4.      All requirements for removal under diversity jurisdiction have been met, as addressed below.

5.      Finally, the Second Amended Complaint presents a federal question, independently supporting removal, as also discussed below.

---

[1] Plaintiffs seek to represent a class defined as:

All non-governmental organizations and their assignees (collectively "Secondary Payors"), that provide health and prescription benefits in the State of Florida to Members who are also insured by the Defendants under a No-Fault, PIP, or Med Pay insurance policies.

*See* SAC ¶ 64. The SAC alleges "[t]he Class consists of hundreds of Secondary Payors and their assignees . . . ." *Id*. ¶ 74.

[2] Generally, Medicaid or Medicare "Secondary Payers" are entities that provide medical coverage for their enrollees who have other sources of coverage, such as group health plans, Workers' Compensation, No Fault or third-party liability coverages, which are responsible to pay first. Plaintiffs allege they have obtained assignments from Secondary Payers to bring the Proposed Second Amended Complaint. *See* SAC ¶ 2.

72121450;2

## II.   ALL CAFA REQUIREMENTS ARE SATISFIED.

### A.   Procedural History

6.      The initial Complaint in this Action was filed on December 21, 2018, in the Circuit Court of the Eleventh Judicial Circuit in and for Miami Dade County, styled *MSP Recovery Claims Series, LLC, MSPA Claims 1, LLC and Series PMPI v. ACE Property and Casualty Insurance Company, ACE Insurance Company of the Midwest, ACE Fire Underwriters Insurance Company, and ACE American Insurance Company*, Case No. 18-042391-CA-05 (the "State Court Action"), as a single count case seeking a pure bill of discovery to obtain information about accident claims made with Defendants by "Medicaid Enrollees" of Plaintiffs' alleged assignors. The allegations in the initial Complaint did not set forth an amount in controversy, did not refer to any specific claims (let alone actual demands for money), addressed only Medicaid-related items, and set forth solely a request for discovery. A copy of the initial Complaint is attached hereto as **Exhibit 2**.

7.      On October 2, 2019, shortly before a scheduled hearing on Defendants' motion to dismiss the initial Complaint, Plaintiffs filed an Amended Complaint, modifying the types of Medicaid-related information sought. The allegations in the Amended Complaint, like the initial pleading, did not set forth an amount in controversy, did not refer to any specific claims let alone actual demands for money, and addressed only Medicaid-related items. A copy of the Amended Complaint is attached hereto as **Exhibit 3**. Defendants moved to dismiss the Amended Complaint on October 25, 2019.

8.      Thereafter, Plaintiffs sought and abandoned an effort to consolidate the case for certain purposes with other cases against unrelated parties, and then ultimately brought the substantive proceedings to a halt by moving to disqualify counsel for Defendants on December 12, 2020. The substantive case had to be put on hold until Plaintiffs finally withdrew their motion

72121450;2

seeking disqualification of defense counsel, which had been unsuccessful in multiple other courts and cases. On February 13, 2023, to kick-start the case, Defendants filed a Renewed Motion to Dismiss the Amended Complaint.

9.     Shortly thereafter, Plaintiffs on May 30, 2023 filed their Motion for Leave to File Second Amended Complaint. And, on July 24, 2023, the State Court granted the Motion. The Second Amended Complaint was deemed filed pursuant to a State Court order entered on July 24, 2023. The State Court also ordered that the Defendants' response to the Second Amended Complaint would be due in thirty (30) days, or by August 23, 2023.

       **B.**     **<u>The Notice of Removal Is Timely.</u>**

10.     Where "the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).

11.     Here, the filed Second Amended Complaint introduces allegations of specific claims for money, class claims, and a request that the Court declare, *inter alia*, the obligations and rights of Defendants vis-a-vis Medicare plans, among others (including that certain defenses to Medicare reimbursement suits do not apply). The Second Amended Complaint both introduces a federal question and is an "other paper" for purposes of establishing the amount in controversy. *See* 28 U.S.C. § 1446(c)(3)(A) ("If the case stated by the initial pleading is not removable solely because the amount in controversy does not exceed the amount specified in section 1332(a), information relating to the amount in controversy in the record of the State proceeding, or in

responses to discovery, shall be treated as an "other paper" under subsection (b)(3).").[3]

12.     This Notice of Removal is timely filed within thirty (30) days of the filing of the Second Amended Complaint, in accordance with 28 U.S.C. § 1446. *See, e.g.*, *Bollinger*, 538 F. App'x at 863 (11th Cir. 2013) ("[T]he only relevant date in the removal timeliness analysis is . . . the date on which the state court granted Bollinger's motion for leave to file a second amended complaint and deemed Bollinger's second amended complaint filed, which is the date on which the 30–day removal clock began to run.").

13.     Although there is a one-year time limitation that applies to some diversity removals, it does not apply to a removal under CAFA. *See* 28 U.S.C. § 1453(b) ("A class action may be removed to a district court of the United States in accordance with section 1446 (except that the 1-year limitation under section 1446(c)(1) shall not apply) . . . ."); *see also, e.g.*, *Kelly v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 9888731, at *3 (M.D. Fla. Sept. 23, 2010) ("[P]ursuant to 28 U.S.C. § 1453(b) the one year limited removal period for diversity suits was eliminated for removal of class actions and therefore the removal in this case was not untimely even though it was removed more than one year from the date the action was commenced."). It also does not apply to a removal based on a newly-introduced federal question. *Jeffries v. Sunrise Hotel Corp.*, 2008 WL 4951600, at *2 (S.D. Fla. Nov. 18, 2008) ("Defendants properly removed the case within thirty days of the first notice of a federal question."). Because this Notice removes the Action under CAFA and federal question jurisdiction (apart from removal under diversity jurisdiction), the one-year

---

[3] A state court action is not removable on the basis of a proposed amended complaint until the state court grants the motion to amend. *See Bollinger v. State Farm Mut. Auto Ins. Co.*, 538 Fed App'x 857, 863 (11th Cir. 2013); *see also, e.g.*, *Miami Beach Cosm. & Plastic Surgery Ctr., Inc. v. UnitedHealthcare Ins. Co.*, 2016 WL 8607846, at *3 (S.D. Fla. Jan. 8, 2016) ("In the usual case, regardless of whether removal is based on federal question or diversity jurisdiction, a proposed amended complaint will not suffice to furnish a basis for removal jurisdiction.").

72121450;2

limitation is inapplicable to those bases.

### C.        Jurisdiction is Proper Under CAFA.

14.        This suit satisfies all of the requirements under CAFA for federal jurisdiction:[4] (1) the putative class exceeds 100; (2) some of the members of the proposed class have a different citizenship from the Defendant; (3) the amount in controversy exceeds $5 million; and (4) the exceptions to CAFA do not apply. *See* 28 U.S.C. § 1332(d); *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1163 (11th Cir. 2006) (summarizing CAFA removal requirements); *see also Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 751 (11th Cir. 2010) (same).

### i.        The Putative Class Exceeds 100 Members.

15.        CAFA requires that the class consist of at least 100 persons. 28 U.S.C. § 1332(d)(5). That requirement is clearly met here, as the Second Amended Complaint states that numerosity for a class action is met because "[t]he Class consists of **hundreds** of Secondary Payors and their assignees." SAC ¶ 74 (emphasis added). The Second Amended Complaint also refers to "the burden of this Court of handling **several thousand** individual cases." *Id.* ¶ 79 (emphasis added).

16.        Additionally, even considering only putative class members that are Medicare Advantage Organizations ("MAOs") and Medicaid Managed Care Organizations ("MCOs"), the putative class as defined easily exceeds 100 members. The Centers for Medicare and Medicaid Services maintains a directory of all MAOs. *See MA Plan Directory*, Ctrs. Medicare & Medicaid Servs. (May 2023) (*available at* https://www.cms.gov/research-statistics-data-and-systems/ statistics-trends-and-reports/mcradvpartdenroldata/ma-plan-directory) (last accessed July 16, 2023). The directory lists 968 MAO plans that offer services to Medicare beneficiaries. Of those,

---

[4] The Second Amended Complaint seeks to certify a class pursuant to Rules 1.220(b)(1), (b)(2), and/or (b)(3) of the Florida Rules of Civil Procedure, which is the Florida equivalent to Rule 23 of the Federal Rules of Civil Procedure. *See* SAC ¶¶ 79-81.

86 plans list a primary directory address in Florida. *Id.* Additional MAOs offer coverage to Florida residents despite having primary directory addresses in other states. *See, e.g.*, *id.* (listing an entry for "Humana Health Insurance Company of Florida, Inc." with a directory address in Kentucky). According to the federal government's official Medicaid website, 19 MCOs currently offer services to Medicaid beneficiaries in Florida. *See* https://www.medicaid.gov/sites/default/files/2020-02/florida-mcp.pdf (last accessed August 7, 2023). As a result, even without considering subcontractors (which Plaintiffs often refer to as "first-tier and downstream entities") and any other "assignees," as referred to in the class definition, the Plaintiffs' proposed class would encompass more than 100 members—as Plaintiffs themselves allege.

ii.      <strong><u>There Is Minimal Diversity.</u></strong>

17.      The second CAFA requirement is minimal diversity—at least one putative class member must be a citizen of a different state than any one defendant. 28 U.S.C. § 1332(d)(2)(A).

18.      Unlike traditional diversity jurisdiction, "for the CAFA's jurisdictional purposes, an [LLC] is a citizen of the state in which it is organized and the state of its principal place of business." *See Alvarez v. Loancare LLC*, 2021 WL 184547, at *7 (S.D. Fla. Jan. 19, 2021) (Altonaga, J.); 28 U.S.C. § 1332(d)(10); *see also Ferrell v. Express Check Advance of SC LLC*, 591 F.3d 698, 705 (4th Cir. 2010) ("[A] limited liability company . . . is an 'unincorporated association' within the meaning of § 1332(d)(10).").

19.      As set forth below, using the aforementioned CAFA test for jurisdiction, based on the allegations of the Second Amended Complaint, all Plaintiffs are citizens of Florida and Delaware:

a.      MSP Recovery Claims, Series LLC ("MSPRC") is a series limited liability

72121450;2

company organized under the laws of Delaware with its principal place of business in Miami-Dade County, Florida. *See* SAC ¶ 23.

b.      MSP Recovery Claims Series 44, LLC ("Series 44") is a series limited liability company organized under the laws of Delaware with its principal place of business in Coral Gables, Florida. *See id.* ¶ 26.

20.     Three of the four Defendants are citizens of Pennsylvania, incorporated in Pennsylvania with a principal place of business in Philadelphia, Pennsylvania. The fourth is incorporated in Indiana with its principal place of business in Richmond, Indiana:

a.      Defendant ACE Property and Casualty Insurance Company is a Pennsylvania Corporation with its principal place of business in Philadelphia, Pennsylvania.

b.      Defendant ACE Insurance Company of the Midwest is an Indiana Corporation with its principal place of business in Richmond, Indiana.

c.      Defendant ACE Fire Underwriters Insurance Company is a Pennsylvania Corporation with its principal place of business in Philadelphia, Pennsylvania.

d.      Defendant ACE American Insurance Company is a Pennsylvania Corporation with its principal place of business in Philadelphia, Pennsylvania.

21.     Even if this Court were to apply the traditional standard for determining the citizenship of limited liability companies like Plaintiffs, moreover, minimal diversity would still exist because at least one of the Plaintiffs has no members that are citizens of Pennsylvania or Indiana. *See* ¶¶ 44-45, *infra.*

22.     In sum, at least one class member is a citizen of a different state than a Defendant, and there exists minimal diversity. 28 U.S.C. § 1332(d)(2)(A).

72121450;2

### iii.       **The Amount in Controversy Exceeds $5 Million.**

23.      For CAFA jurisdiction, the aggregate amount in controversy must exceed $5 million for the putative class, exclusive of interest and costs.  *See* 28 U.S.C. ¶ 1332(d)(2).

24.      As the United States Supreme Court has held, Defendants' notice of removal "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). "Evidence establishing the amount is required by §1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Id.*

25.      Based upon Plaintiffs' allegations and theories as set forth in the Second Amended Complaint (which Defendants dispute, but which control for removal purposes), Defendants plausibly allege that the $5 million CAFA amount in controversy requirement is satisfied.

26.      Specifically, Plaintiffs includes in the Second Amended Complaint allegations that they sent Defendants reimbursement demands. *See* SAC ¶ 58. These 44 demands seek payment of in excess of $4.67 million. *See* **Composite Exhibit 4** (a sampling of demands Plaintiffs sent to Defendants).

27.      It is of no matter for removal that Plaintiffs seek declaratory relief regarding the Defendants' and Plaintiffs' obligations, and a pure bill of discovery regarding these claims. "When a plaintiff seeks injunctive or declaratory relief, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective." *Fastcase, Inc. v. Lawriter, LLC*, 907 F.3d 1335, 1344 n.8 (11th Cir. 2018) (internal quotation marks omitted); *see also Leininger v. Leininger*, 705 F.2d 727, 729 (5th Cir. 1983) (amount-in-controversy in an action for declaratory relief is "the value of the right to be protected or the extent of the injury to be prevented").

28.      Plaintiffs allege they intend to sue for reimbursement using the information they

seek to obtain in their pure bill count. *See* SAC ¶ 98 ("Should the Defendants provide the requested information, Plaintiffs can cross-refence its database with Defendants' information to identify the proper Defendants from which to recover payments made as payor of last resort."). And, Plaintiffs already have set forth that they seek at least $4.67 million in just the 44 demands they already sent.[5]

29.     The Second Amended Complaint also seeks declarations that would eliminate legal and proof obligations of Plaintiffs and Class Members, thereby eviscerating defenses to their claims, including but not limited to the 44 (for which the amount sought is more than $4.67 million). For example, it asks this Court to declare that Plaintiffs and Class Members are exempt from the Florida Statute § 627.736(10) requirement that they send a detailed pre-suit demand to Defendants and that Defendants be given 30 days to pay before any lawsuit for payment of No Fault benefits can be filed. *See* SAC ¶ 92. This request is a blatant attempt to gut the impact of the Eleventh Circuit Court of Appeals holding to the contrary in *MSP Recovery Claims, Series LLC v. United Auto. Ins. Co.*, 60 F.4th 1314, 1322 (11th Cir. 2023) (affirming summary judgment in favor of insurer where Plaintiff failed to satisfy this requirement). Likewise, the Second Amended Complaint seeks a declaration that Plaintiffs do not need to provide actual billing and payment records. *See* SAC ¶ 92. This is an attempt to avoid the impact of two summary judgment defeats Plaintiffs suffered in *MAO-MSO Recovery II, LLC v. Farmers Ins. Exch.*, 2022 WL 1690151, at

---

[5] Also, through this action, Plaintiffs seek to relieve themselves of the administrative costs of fact-gathering, identifying and confirming potential claims, and presenting the claims to Defendants in detailed pre-suit demands as required by Florida Statute § 627.736. Plaintiffs' usual *modus operandi* is to buy a hodge-podge of data from third parties and then pay their staff to use this material to try to identify potential claims. Thus, the value to Plaintiffs of the relief sought includes bypassing all of this these costs, and the cost of gathering the specifics needed for the statutory pre-suit demand letters. In *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 994 F.3d 869, 872 (7th Cir. 2021), the court noted that Plaintiffs have a financial incentive to expend as little as possible to determine if they have valid claims and recover alleged debts.

*12-13 (C.D. Cal. May 25, 2022), in which a district Court concluded that the Plaintiffs' data spreadsheets are not sufficient proof of their claims. *See also MAO-MSO Recovery II, LLC v. Farmers Ins. Exch.*, WL 1690150, at *12-13 (C.D. Cal. May 25, 2022) (same).

30.     This Action therefore resembles *S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1316 (11th Cir. 2014) where the Eleventh Circuit reversed an order of remand and determined that the CAFA amount in controversy requirement was met, explaining that:

> [T]he declaratory judgment Wellness seeks will determine whether Allstate made insufficient payments on more than 1.6 million "bills for payment or reimbursement," with the amount of the insufficiency exceeding $68 million, which it will owe the putative class members. That is the amount in controversy . . . and it is far above the $5 million threshold set by CAFA. In support of its position that the value of the declaratory relief in this case was too speculative, Wellness points to the multiple events that must occur before any putative class member could recover additional money from Allstate in the event that the declaratory judgment goes in favor of the class. . . . Wellness argues that with all of those contingencies standing between any class member and recovery, valuing a declaratory judgment is far too speculative. . . . [I]t relies on the assumption that class members armed with a declaratory judgment would not later seek out the additional payment they are owed. That assumption is contrary to human nature and the nature of lawyers. . . . Wellness' speculation argument is itself too speculative.

*See id.* (internal citations omitted).

31.     Considering the potential claims brought on behalf of absent class members, the total amount in controversy only balloons further. Plaintiffs allege there are "hundreds" of class members" and "several thousand" claims. *See* SAC ¶¶ 74, 79. Accordingly, given that that the class members are required to be similarly situated to Plaintiffs and their assignors, and thus using the average dollar amount for Plaintiffs' claims already demanded (approximately $106,145.00), for just 1,001 claims, the putative class claims would total more than $106.3 million. Combined with the Plaintiffs' already identified claims for $4.67 million, the total amount in controversy is in excess of $110 million.

32.     Further, Plaintiffs have requested an award of attorneys' fees pursuant to Fla. Stat.

§ 627.428. Although Defendants dispute Plaintiffs or the putative class are entitled to any such award, and dispute that the statute applies to the Plaintiffs' or the class's claims as a matter of fact or law, for purposes of removal, Plaintiffs' assertion of a statutory right to attorneys' fees is properly considered in ascertaining the amount in controversy. *See, e.g.*, *Smith v. GTE Corp.*, 236 F.3d 1292, 1305 (11th Cir. 2001) ("There is an exception to the 'American Rule,' and thus, 'direct legal authority' supporting inclusion of a claim for attorney's fees in determining the amount in controversy, when an award of fees is authorized either by statute or contract."); *Sheffield Woods at Wellington Condo. Ass'n v. Scottsdale Ins. Co.*, 2009 WL 2255219, at *1 (M.D. Fla. July 28, 2009) (denying motion to remand, finding amount in controversy met based in part on potential for attorneys' fees under Fla. Stat. § 627.428). Here, the possibility of attorneys' fees simply swells the amount in controversy.

33.     For all the foregoing reasons, it is evident that the $5 million CAFA amount in controversy requirement is more than satisfied.

#### iv.      **The Exceptions to CAFA Do Not Apply.**

34.     CAFA provides two mandatory exceptions to the application of federal jurisdiction and one discretionary exception. *See* 28 U.S.C. § 1332(d)(4)(A)-(B) and 28 U.S.C. § 1332(d)(3).

35.     Both the mandatory and discretionary exceptions to CAFA require the presence of a nondiverse in-state defendant. *See* 28 U.S.C. § 1332(d)(4)(A)-(B) (noting that mandatory abstention requires either: (1) "significant relief" to be sought from an instate defendant (local controversy exception) or that (2) the "primary defendant" to be an in-state one (home state exception)); 28 U.S.C. § 1332(d)(3) (noting that the discretionary abstention requires the "primary defendant" be an in-state one).

36.     Here, no Defendant is an in-state defendant. *See* ¶ 20, *supra*; *see also* 28 U.S.C. §

1332(c)(1).

### III.   ALL REQUIREMENTS FOR DIVERSITY JURISDICTION ARE SATISFIED.

#### A.   The Notice of Removal Is Timely.

37.     As set forth above, *see* ¶¶ 10-13, in accordance with 28 U.S.C. § 1446, this Notice of Removal is timely filed within thirty (30) days of the filing of the Second Amended Complaint, which for the first time introduces allegations of specific claims for money, class claims, and a request that the Court declare, *inter alia*, the obligations and rights of Defendants vis-a-vis Medicare plans, among others. *See, e.g.*, *Bollinger*, 538 F. App'x at 863.

38.     Further, under 28 U.S.C. § 1446(b)(1), the removal is timely because Plaintiffs have acted in bad faith in order to prevent Defendants from removing the action. 28 U.S.C. § 1446(b)(3)(B). Under 28 U.S.C. § 1446(b)(1), a complaint may be removed on diversity grounds more than one year after it is filed provided that the "district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." Where "the district court finds that the plaintiff deliberately failed to disclose the actual amount in controversy to prevent removal, that finding shall be deemed bad faith under paragraph (1)." 28 U.S.C. § 1446(b)(3)(B). "Bad faith can generally be inferred from amendment outside of the statutory bar where the plaintiff has provided no justification for the delay." *Hill v. Allianz Life Ins. Co. of N. Am.*, 51 F. Supp. 3d 1277, 1282 (M.D. Fla. 2014), *aff'd Hill v. Allianz Life Ins. Co. of N. Am.*, 693 F. App'x 855 (11th Cir. 2017) (internal quotation marks omitted); *see also, e.g.*, *Schwartzben v. Nat'l Fire & Marine Ins. Co.*, 2022 WL 4102799, at *5 (S.D. Fla. Sept. 8, 2022) (finding bad faith where "[t]he delay in removal [was] a direct result of Plaintiff's gamesmanship.").

39.     Here, in moving to file the Second Amended Complaint, Plaintiffs offered no explanation whatsoever for their years'-long delay. There is ample basis from which this Court

can conclude that Plaintiffs deliberately acted in bad faith to avoid federal jurisdiction initially,[6] while delaying for more than a year the most recent amendment that for the first time includes, *inter alia*, specific demands for payment, a putative class, and a count for declaratory relief—all about Medicare, in addition to Medicaid. Most of the 66 newly added assignments predate the original Complaint; and some of the specific claims for which Plaintiffs allege they sent demands date as far back as 2010, well before the initial pleading. *See id.* at App.; *see also* **Composite Exhibit 4**. Plaintiffs could have chosen to include allegations about these assignments and claims when they filed their initial Complaint, but they chose to wait until now to inject them into the case. The same analysis applies to the late addition of the putative class claims and the count seeking declaratory relief, which Plaintiffs could have included at the outset of this case.

40.     Courts in this district predicted this gamesmanship and expressed suspicion at Plaintiffs' tactics when they reluctantly remanded similar cases back in 2019 with "a warning." *See, e.g.*, *MSP Recovery Claims, Series LLC v. Bos. Sci. Corp.*, 2019 WL 180125, at *2 (S.D. Fla. Jan. 9, 2019). As one judge stated, courts in this district were "well aware" of the numerous complaints "with which Plaintiffs have clogged this district." *Id.* Accordingly, Plaintiffs were warned that "if *any future defendant* is able to show that Plaintiffs eventually amend their bills of pure discovery" in a way that would confer federal jurisdiction, courts would "deny remand" and "seriously consider whether Plaintiffs' representations in this case amount to a breach of their duty

---

[6] Here, the initial Complaint was nearly identical to the dozens filed by Plaintiffs in the Eleventh Judicial Circuit of Florida in late 2018 and early 2019 against insurance companies and drug and medical device manufacturers, of which many were removed and then remanded because the courts found that the pleadings did not allege a specific cause of action (other than for discovery) nor a number of potential claims, making the amount of money at issue too speculative. *See, e.g.*, *MSP Recovery Claims, Series, LLC v. Hanover Ins. Co.*, 2019 WL 2105978, at *1 (S.D. Fla. Apr. 22, 2019) (collecting opinions remanding functionally identical actions brought by Plaintiffs against other insurers).

72121450;2

of candor and whether sanctions are appropriate." *Id.*

41.     In light of the foregoing, this Court may conclude that Plaintiffs chose to withhold these allegations until the Second Amended Complaint in bad faith as a calculated decision to avoid triggering federal jurisdiction. Accordingly, removal is timely because Plaintiffs have acted in bad faith within the meaning of 28 U.S.C. § 1446.

      **B.**    **Diversity Jurisdiction is Proper.**

          **i.**    **Complete Diversity Exists.**

42.     For diversity purposes, a corporation is a citizen of both the state of where it is incorporated and state where it has its principal place of business.  28 U.S.C. § 1332(c)(1). Under the traditional standard for determining the citizenship of limited liability companies like Plaintiffs, "a limited liability company is a citizen of any state of which a member of the company is a citizen." *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004) ("[A] limited liability company is a citizen of any state of which a member of the company is a citizen.").

43.     Defendants are citizens of Pennsylvania and Indiana. *See* ¶ 20, *supra*.

44.     Using the test for diversity jurisdiction (not under CAFA), Plaintiff MSPRC is a citizen of Texas and Florida:

      a.     MSPRC "is a series limited liability company formed in Delaware, and its sole member is VRM MSP Recovery Partners, LLC, a Delaware limited liability company." Citizenship Affidavit on Behalf of MSP Recovery Claims, Series LLC ¶ 3, Case No. 1:18-24246-RNS [ECF No. 20-1] (S.D. Fla. Dec. 20, 2018).

      b.     "The members of VRM MSP Recovery Partners, LLC are (i) Virage Recovery Master LP, a Delaware limited partnership and (ii) Series MRCS, a designated series of

MDA, Series LLC, a Delaware series limited liability company." *Id.* ¶ 4.

      c.    "The sole general partner of Virage Recovery Master LP is Virage Recovery, LLC, a Texas limited partnership. The sole members of Virage Recovery, LLC are individual residents/citizens of Texas." *Id.* ¶ 5.

      d.    "The members of Series MRCS and MDA, Series LLC consist of individual residents/citizens of Florida and a Florida family limited liability partnership, the general partners of which are individual resident/citizen trustees of Florida trusts." *Id.* ¶ 6

    45.    Based on its public filings, Plaintiff Series 44 is a Delaware limited liability corporation and is not a citizen of Pennsylvania or Indiana.

      a.    Series 44 is a Delaware series limited liability company. *See* Pls.' Corporate Disclosure Statement and Certificate of Interested Parties ¶ 3, Case No. 1:22-cv-09838 [ECF No. 12] (S.D. Fla. Nov. 22, 2021).

      b.    The sole member of Series 44 is MSP Recovery Holdings Series 01, LLC, a Delaware series limited liability company. *See id.*

      c.    The sole member of MSP Recovery Holdings Series 01, LLC is Hazel Holdings I LLC, a Delaware limited liability company. *See* Certificate of Interested Persons/Corporate Disclosures ¶ 1, Case No. 1:22-cv-11310 [ECF No. 14] (D. Mass Nov. 29, 2022).

      d.    The sole member of Hazel Holdings I LLC is Hazel Partners Holdings, LLC, a Delaware limited liability company. *See id.*

      e.    Based upon information and belief, none of the members of Hazel Partners Holdings, LLC are citizens of Pennsylvania or Indiana.

      ii.       **The Amount in Controversy Exceeds $75,000.00.**

46.    For diversity jurisdiction, the amount in controversy must exceed $75,000.00. *See* 28 U.S.C. ¶ 1331(a)(1).

47.    As set forth above, *see* ¶¶ 27-37, based upon Plaintiffs' allegations and theories (which Defendants dispute, but which control for removal purposes) as set forth in the Second Amended Complaint, Defendants plausibly allege that the $75,000.00 amount in controversy requirement is satisfied. Before even considering the putative class, Plaintiffs' demands that they allege total more than $4.6 million. Indeed, just the small sampling attached at Composite Exhibit 4 total $750,894.94, well in excess of the threshold $75,000.00.

## IV.    THE SECOND AMENDED COMPLAINT PRESENTS A FEDERAL QUESTION.

48.    Plaintiffs' Second Amended Complaint seeks declaratory relief as to the obligations of Defendants vis-a-vis "Secondary Payors," which Plaintiffs define to include Medicare Advantage Organizations ("MAOs").[7] *See* SAC at n.1. Specifically, Plaintiffs seek a declaration that Defendants "must determine whether their insureds are also Members covered by Secondary Payors, and if so, then, the . . . Defendants must coordinate benefits with Secondary Payors." *See id.* ¶ 6(a).

49.    The coordination of benefits between insurers like Defendants and MAOs is governed by federal law. In particular, the federal Medicare Secondary Payer Act (the "MSP Act") and its implementing regulations specifically set forth the obligations of MAOs and insurers with respect to the coordination of benefits. *See* 42 U.S.C. § 1395y(b)(4)-(8) (detailing coordination of

---

[7] MAOs are private, for-profit companies that contract with the federal Centers for Medicare and Medicaid Services ("CMS") to provide Medicare coverage based on a set flat fee per enrollee. 42 U.S.C. § 1395w-21; 42 U.S.C. § 1395w-23. Part C of the Medicare Act allows beneficiaries to obtain benefits through MAOs, instead of directly from the government. 42 U.S.C. § 1395w-21(a).

benefits and information sharing obligations); *see also* 42 C.F.R. § 422.108(b) (providing that before making any payment an MAO "must" "[i]dentify payers that are primary to Medicare," "[i]dentify the amounts payable by those payers," and "coordinate its benefits to Medicare enrollees with the benefits of the primary payers."); *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 2019 WL 6311987, at *6 (C.D. Ill. Nov. 25, 2019), *aff'd*, 994 F.3d 869 (7th Cir. 2021) ("[T]he implementing regulations require MAOs to identify and coordinate with primary insurers.").[8]

50.     Accordingly, the resolution of Plaintiffs' claim for declaratory relief regarding Defendants' obligations to coordinate benefits with MAOs "necessarily depends upon the resolution of a substantial question of federal law," creating federal question jurisdiction pursuant to 28 U.S.C. § 1331, because the determination of Defendants' obligations to coordinate benefits with MAOs, if any, will necessarily depend on the construction of the MSP Act and its implementing regulations. *See Stone v. Bank of New York Mellon, N.A.*, 609 F. App'x 979, 981 (11th Cir. 2015); *see also, e.g.*, *Harrell v. Farm Credit Nw. Fla., ACA*, 2006 WL 3507949, at *3 (M.D. Fla. Dec. 5, 2006) ("[A] court will have federal question jurisdiction when an essential element of the claim requires a court to determine the effect or construction of a federal law.").

51.     In fact, in seeking to remand a similar case, Plaintiffs explicitly admitted that their request for declaratory relief presents a federal question regarding the MSP Act:

> [T]he trigger for the amendment three years after the limitation for removal ran was the 11th Circuit's recent opinion *in MSP Recovery Claims, Series LLC v. United Auto. Ins. Co.*, 60 F.4th 1314 (11th Cir. 2023) which expressly held that the

---

[8] *See* 42 U.S.C. § 1395y(b)(2)(A) ("[T]he term 'primary plan' means a group health plan or large group health plan, to the extent that clause (i) applies, and a workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance, to the extent that clause (ii) applies."); *MSPA Claims 1, LLC v. Tenet Fla., Inc.*, 918 F.3d 1312, 1316 (11th Cir. 2019) ("The MSP Act made private insurers 'primary' payers (pay first) and Medicare the 'secondary' payer (pay only if a balance is remaining).").

Medicare Secondary Payer Act does not preempt F.S. Section 627.736(10). The interaction between the Medicare Secondary Payer Act, F.S. Section 627.736(10) and the relationship between Plaintiffs as secondary payers and Defendants as primary payers was now uncertain and declaratory relief was required.

*See MSP Recovery Claims, Series LLC et al. v. Hartford Accident and Idem. Co., et al.*, Case No. 1:23-cv-22244-DPG [ECF No. 19 at 12-13] (S.D. Fla. July 17, 2023).

52.     Again, this Notice of Removal is timely because it is filed within thirty (30) days of the filing of the Second Amended Complaint, which was the first pleading in this Action that presented a federal question. 28 U.S.C. § 1446; *see also, e.g.*, *Bollinger*, 538 F. App'x at 863 (11th Cir. 2013); *Jeffries*, 2008 WL 4951600, at *2.

## V.     DEFENDANTS HAVE FULFILLED ALL OTHER REQUIREMENTS FOR REMOVAL AND PRESERVE THEIR RIGHTS AND DEFENSES.

53.     Under 28 U.S.C. § 1441(a), venue for purposes of removal is proper in this District because the State Court where the Action is pending, the Circuit Court of the Eleventh Circuit in and for Miami-Dade County, Florida, General Jurisdiction Division, is within the Southern District of Florida.

54.     Contemporaneous with the filing of this Notice of Removal, Defendants have provided written notice of the removal to Plaintiffs through its counsel of record in the State Court Action. Defendants have or will promptly file a copy of this Notice of Removal, together with all exhibits, with the Clerk of the Circuit Court of the Eleventh Circuit in and for Miami-Dade County, Florida, General Jurisdiction Division, as required by 28 U.S.C. § 1446(d).

55.     As per 28 U.S.C. § 1446(a), true and correct copies of all process, pleadings, and orders served upon Defendants are being filed in this Court contemporaneous herewith.

56.     The undersigned state that this removal is well-grounded in fact, warranted by existing law, and not interposed for any improper purpose.

57.     By virtue of this Notice of Removal and the Notice filed in the State Court Action, Defendants do not waive their rights to assert and expressly reserve all defenses, including but not limited to, personal jurisdictional and venue defenses, the legal sufficiency of the claims alleged in the State Court Action, or any other motions, including but not limited to, Rule 12 motions, and all those other defense and motions otherwise permitted by the Federal Rules of Civil Procedure and/or governing law.

## VI.    CONCLUSION

WHEREFORE, without waiving any of its potential defenses or counterclaims, Defendants respectfully remove this action from the Circuit Court of the Eleventh Circuit in and for Miami Dade County, Florida, General Jurisdiction Division, to this Court and respectfully request that: this Court will consider this Notice of Removal as provided by the law governing removal of cases to this Court; that this Court will make the proper orders to achieve the removal of the state court action to this Court; and that this Court will make such other orders as may be appropriate to effect the preparation of filing of a true record in this cause of all proceedings that may have been had in the state court action.

Dated: August 10, 2023

**AKERMAN LLP**

*/s/ Valerie Greenberg*
Valerie Greenberg, Esq. (FBN 026514)
Alexander Hall, Esq. (FBN 0112948)
E-mail:  valerie.greenberg@akerman.com
E-mail:  alexander.hall@akerman.com
E-mail:  debra.atkinson@akerman.com
E-mail:  kim.stathopulos@akerman.com
Three Brickell City Centre
98 Southeast Seventh Street, Suite 1100
Miami, FL  33131
Phone:  (305) 374-5600

72121450;2

Fax: (305) 374-5095

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 10, 2023, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court by CM/ECF and served on all counsel of record and all others registered to receive electronic service of court documents in this case via transmission of the Notice of Electronic Filing generated by CM/ECF, including those listed below.

John H. Ruiz, Esq.
Alexis Fernandez
MSP Recovery Law Firm
5000 S.W. 7th Ave., Suite 400
Miami, FL  33155
305-614-2239
Service E-mail: serve@msprecovery.com
jruiz@msprecovery.com
afernandez@msprecoverylawfirm.com

J. Alfredo Armas
Armas Bertran Zincone
4960 SW 72nd Avenue, Suite 206
Miami, FL  33155
(305) 461-5100
alfred@armaslaw.com

**AKERMAN LLP**

*/s/  Valerie Greenberg*
Valerie Greenberg