UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-cv-23018-BLOOM/OTAZO-REYES

MSP RECOVERY CLAIMS, SERIES LLC,
and MSP RECOVERY CLAIMS, SERIES 44 LLC,

    Plaintiffs,

v.

ACE PROPERTY AND CASUALTY
INSURANCE COMPANY, ACE INSURANCE COMPANY
OF THE MIDWEST, ACE FIRE UNDERWRITERS
INSURANCE COMPANY, and ACE AMERICAN INSURANCE
COMPANY,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE came before the Court upon Plaintiffs MSP Recovery Claims, Series LLC, and MSP Recovery Claims, Series 44 LLC's (together, "Plaintiffs") Motion for Remand [D.E. 13]. This matter was referred to the undersigned by the Honorable Beth Bloom, United States District Judge [D.E. 22]. The undersigned held a hearing on this matter on October 24, 2023 ("Hearing") [D.E. 26]. For the reasons stated below, the undersigned respectfully recommends that Plaintiffs' Motion for Remand be GRANTED but that Plaintiffs' request for attorney's fees and costs incurred in connection with the Motion for Remand be DENIED.

## PROCEDURAL AND FACTUAL BACKGROUND

On December 21, 2018, Plaintiffs filed a Complaint in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida (the "State Court") seeking to obtain a pure bill of discovery compelling Defendants, ACE Property and Casualty Insurance Company, Ace Insurance Company of the Midwest, ACE Fire Underwriters Insurance Company, and Ace

American Insurance Company (collectively, "Defendants"), to identify whether certain Medicaid beneficiaries who had been involved in personal injury accidents were insured by Defendants. See Compl. [D.E. 1-3 at 2–3]. On October 2, 2019, Plaintiffs filed their First Amended Complaint ("FAC") modifying the categories of Medicaid-related information sought in their pure bill of discovery. See generally Am. Compl. [D.E. 1-4]. Neither the Complaint nor the FAC sought monetary damages. See id.

While the case was still being prosecuted in the State Court, Defendants moved to dismiss the FAC and, shortly thereafter, Plaintiffs sought leave to file a Second Amended Complaint ("SAC"). See Plfs.' Motion for Leave to File SAC [D.E. 1-2 at 2–3]. The SAC, which was deemed filed on July 24, 2023, seeks class certification, a pure bill of discovery, and declaratory relief to determine the parties' rights and obligations under Florida's Motor Vehicle No-Fault Law and the Florida Personal Injury Protection Statute (the "PIP Statute") thereunder, Fla. Stat. § 627.736 (4), (5) & (10). See SAC [D.E. 1-2 at 24–30]. Like Plaintiffs' first two pleadings, the SAC does not seek monetary damages. See id. ¶¶ 84–101.

The SAC specifically alleges that Plaintiffs are entities who "have obtained assignments from Secondary Pay[e]rs" who made payments on behalf of insured beneficiaries' accident-related medical expenses and have sent written reimbursement demands to Defendants for those payments. See SAC [D.E. 1-2 at 7]. Some of the assignments are predicated on the Medicare Secondary Payer ("MSP") Act, 42 U.S.C. section 1395y. Id. at 86. Under the MSP Act, Secondary Payers have the right to be reimbursed by entities with Primary Payer responsibility for certain medical payments made by the Secondary Payers. See 42 U.S.C. § 1395y. Plaintiffs allege that Defendants have primary payer responsibility under Florida's Motor Vehicle No-Fault Law, section 627.736 (4). See SAC [D.E. 1-2 at 7–8]. Plaintiffs further allege that Defendants have

2

wrongly sought to impose upon Plaintiffs compliance with Florida's PIP Statute Sections 627.736(5) and (10), which Plaintiffs contend does not apply to "Secondary Pay[e]rs". Id. "Secondary Pay[e]rs" are "all non-governmental organizations, including but not limited to Medicaid Managed Care Organizations, Medicare Advantage Organizations, first-tier downstream entities, and their assignees, that provide health and prescription benefits in the State of Florida." Id. ¶ 1, n.2.

Plaintiffs further allege that Defendants have obstructed the coordination of benefits with Secondary Payers and have potentially avoided their financial responsibility as Primary Payers to pay healthcare providers for "accident-related medical expenses" of the parties' mutually insured beneficiaries. Id. at 7–8. As part of their claims, Plaintiffs maintain that the "ongoing issue of failing to identify Secondary Pay[e]rs" and Defendants attempt to impose compliance with Florida's PIP Statute on Secondary Payers are "expected to persist and have continued consequences on future claims." Id. at 8.

On August 10, 2023, Defendants removed the case on the grounds that this Court has: a statutory grant of jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d); diversity jurisdiction pursuant to 28 U.S.C. § 1332(a); and federal question jurisdiction pursuant to 28 U.S.C. § 1331. See generally Notice of Removal [D.E. 1]. Plaintiffs posit that the Court lacks subject matter jurisdiction under all of these grounds, and request that the case be remanded to the State Court. See generally Motion for Remand [D.E. 13]. Plaintiffs also seek attorney's fees and costs for Defendants' purportedly improper removal. Id. at 15–17.

**STANDARD OF REVIEW**

Title 28, United States Code, Section 1441 provides that a defendant may remove to federal court a civil case filed in state court if the federal court has original jurisdiction over the dispute. See 28 U.S.C. § 1441. The three types of original subject matter jurisdiction are: "(1) jurisdiction

under a specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. §1331; and (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)." Baltin v. Alaron Trading Corp., 128 F.3d 1466, 1469 (11th Cir. 1997); 28 U.S.C. § 1332(d)(2). All three grounds for original jurisdiction have been invoked by Defendants. See Notice of Removal [D.E. 1].

With regard to Defendants' first ground for removal, namely, a specific statutory grant, "[u]nder CAFA, federal courts . . . have original jurisdiction over class actions in which the amount in controversy exceeds $5,000,000 and there is minimal diversity (at least one plaintiff and one defendant are from different states)." Evans v. Walter Indus., Inc., 449 F.3d 1159, 1164 (11th Cir. 2006) (citing 28 U.S.C. §1332(d)(2)).

With regard to Defendants' second ground for removal, namely, diversity jurisdiction, the case in controversy must be between citizens of different states and the matter in controversy must exceed $75,000. See 28 U.S.C. § 1332(a).

With regard to Defendants' third ground for removal, federal question jurisdiction exists over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Federal courts can exercise federal question jurisdiction "over state-law claims that implicate significant federal issues." Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312 (2005) (citation omitted). To qualify, "a state-law claim [must] necessarily raise a stated federal issue, [that is] actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Id. at 314.

In removal cases, the defendant bears the burden of establishing jurisdiction. McNutt v. Gen. Motors Acceptance Corp. of Ind., Inc., 298 U.S. 178, 189 (1936). To determine whether the defendant has carried its burden, the court "may rely on evidence put forward by the removing

defendant, as well as reasonable inferences and deductions drawn from that evidence." Id. at 1315. However, "[a]ny doubt regarding the appropriateness of removal must be resolved against accepting removal jurisdiction." Wilson v. Target Corp., No. 10-80451-CIV, 2010 WL 3632794, *1 (S.D. Fla. Sept. 14, 2010).

When a case is remanded due to improper removal, the court may award the plaintiff attorney's fees and costs. See 28 U.S.C. § 1447(c). However, "courts may award attorney's fees [and costs] under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, where an objectively reasonable basis exists, fees [and costs] should be denied." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005).

## **DISCUSSION**

**I.  Amount in Controversy under CAFA and diversity jurisdiction (first and second grounds for removal)**

As previously noted, Defendants removed this case pursuant to CAFA and diversity jurisdiction. See generally Notice of Removal [D.E. 1]. The parties agree that the citizenship requirements for CAFA jurisdiction and diversity jurisdiction are satisfied but disagree as to whether the amount-in-controversy requirements under both provisions are satisfied. See generally Motion for Remand [D.E. 13]; Response to Motion for Remand ("Response") [D.E. 20]. Specifically, Plaintiffs argue that damages are not at issue in the case because they only seek prospective relief; and that Defendants have based the removal on an "unverified and speculative calculation of a fictitious amount in controversy." See Motion for Remand [D.E. 13 at 5–6]. Plaintiffs further argue that the demand letters Defendants rely on for calculating the amount in controversy are not at issue and merely serve as examples of the types of claims Defendants may seek to potentially recover in the future. See id.; Reply to Motion for Remand ("Reply") [D.E. 21 at 2–3].

5

Conversely, Defendants argue that, although Plaintiffs do not expressly assert a claim for damages, their claim for declaratory relief can be quantified based on 44 pre-suit demand letters, which Defendants maintain are incorporated by reference into the SAC through the allegation that Plaintiffs "sent written notice[s] of . . . reimbursement demand[s] to the Defendants after one or more of their Members were involved in an automobile accident or incident." See Resp. [D.E. 20 at 9 (quoting SAC ¶ 2)]. Defendants insist that Plaintiffs' "goal for the declaratory relief is to clear the path for collection on claims" that have already been identified and are pending reimbursement. Id. at 10. According to Defendants, "the value of the declaratory relief to Plaintiffs, on just their own alleged claims already identified, is more than $4.67 million, far in excess of the $75,000 required by 28 U.S.C. § 1332(a) . . . . And, the value to the Plaintiffs and putative plaintiff class is at minimum $110 million, far in excess of the $5 million required by 28 U.S.C. § 1332(d)(2)." See Resp. [D.E. 20 at 8]. At the Hearing, Defendants clarified that they arrived at these valuations based on five reimbursement demands attached to their Notice of Removal [D.E. 1-5], a declaration from defense counsel [D.E. 20-4], and additional demand letters that defense counsel received prior to filing Defendants' Notice of Removal. Defendants further argue that Plaintiffs' claim for a pure bill of discovery also exceeds the amount in controversy requirements because it "incorporates allegations of money demands, and then seeks discovery to confirm those claims to facilitate recovery." See Resp. [D.E. 20 at 13].

"Where the plaintiff has not alleged a specific amount of damages, the defendant seeking removal must establish by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum." S. Fla. Wellness, Inc. v. Allstate Ins. Co., 745 F.3d 1312, 1316 (11th Cir. 2014). "For amount in controversy purposes, the value of injunctive or declaratory relief is the value of the object of the litigation measured from the plaintiff's perspective." Morrison v.

6

Allstate Indem. Co., 228 F.3d 1255, 1268 (11th Cir. 2000). However, the monetary value must be "sufficiently measurable and certain", not speculative. Id. at 1269; Ericsson GE Mobile Commc'ns, Inc. v. Motorola Commc'ns & Elecs., Inc., 120 F.3d 216, 221–22 (11th Cir. 1997) (amount in controversy requirement for diversity jurisdiction cannot be too speculative and immeasurable). For CAFA purposes, the district court aggregates the claims of individual class members and considers "the monetary value that would flow to the entire class if declaratory relief were granted." S. Fla. Wellness, Inc., 745 F.3d at 1316.

To the extent they rely on Plaintiffs' claim for a pure bill of discovery, Defendants fail to satisfy their burden of proving an amount in controversy that is sufficiently measurable and certain for either CAFA or diversity jurisdiction. "Courts in this District . . . have reached the consensus that defendants cannot establish the amount in controversy is met when plaintiffs only seek a pure bill of discovery." MSP Recovery Claims Series LLC et al. v. Zurich Am. Ins. Co., et al., Case No. 23-cv-22450 (S.D. Fla. Sept. 11, 2023) (slip opinion) (citing MSP Recovery Claims, Series, LLC v. Hanover Ins. Co., No. 19-Civ-20507, 2019 WL 2105978, at *2 (S.D. Fla. Apr. 22, 2019), aff'd 995 F.3d 1289 (11th Cir. 2021)) (hereafter, "Zurich").[1] Moreover, the undersigned finds no support for Defendants' naked assertion that the "pure bill claim literally incorporates allegations of money damages" as no such allegations are apparent in the SAC. See Resp. [D.E. 20 at 13]; SAC [D.E. 1-2 at 32–34]. Therefore, the undersigned finds no merit in this argument.

Defendants' reliance on Plaintiffs' pre-suit demand letters for establishing the amount in controversy for both CAFA and diversity jurisdiction over Plaintiffs' declaratory relief claim is also flawed. Several courts in this district have rejected Defendants' argument that Plaintiffs' demand letters provide a sufficient basis for calculating damages on a claim for declaratory relief.

---

[1] Plaintiffs filed a copy of the Zurich opinion with their Notice of Supplemental Authority [D.E. 13-1 at 6].

7

In Zurich, the court found that diversity jurisdiction was lacking because the demand letters upon which the defendants relied for establishing the amount in controversy were too "speculative and uncertain". See Plfs.' Notice of Suppl. Auth. [D.E. 13-1 at 10]. The court reasoned that, as an initial matter, the plaintiffs did not plead a specific amount of damages and had not filed a lawsuit to recover on the "over 50 demand letters for reimbursement" that had been sent to the defendants. Id. at 5, 7. Instead, the plaintiffs sued for "prospective declaratory judgment" and "specifically chose not to pursue damages for [the alleged] retrospective harm" which the court reasoned was the plaintiffs' "right to do", even if it was done for the purpose of avoiding federal jurisdiction. Id. at 8–9 (quoting Mack v. USAA Cas. Ins. Co., 994 F.3d 1353, 1357 (11th Cir. 2021). The Zurich court also analyzed an example of one of the demand letters and found that it was "insufficiently detailed to satisfy Defendants' burden of proof" because the letter was not itemized, provided a defunct website link to the itemized bill, had no damages calculations, and did not include details about the accident victim's injuries or the care that he or she received. Id. at 10–11. The same shortcomings apply to the demand letters in this case. See generally Demand Letters [D.E. 1-5].

Defendants nevertheless insist that the instant case is distinguishable from Zurich because the Zurich court analyzed only a single demand letter, whereas here, Defendants have provided the Court with five examples of demand letters. See Resp. [D.E. 20 at 18]. Aside from the fact that Zurich involved "over 50 demand letters for reimbursement" that were alleged to be at issue by the defendants, the number of demand letters is a distinction without a difference. See Zurich, Plfs.' Notice of Suppl. Auth. [D.E. 13-1 at 5]. The dispositive factors in Zurich were not the number of demand letters but that the fact that the plaintiffs had not sued to recover on any demand

letters and that the letters lacked specificity to establish an amount in controversy on the declaratory relief claim. See id. at 7–10.

On this latter point, Defendants argue that "the demand letters here contain sufficient detail to provide what Plaintiffs must contend is an accurate *estimation* of damages." Resp. [D.E. 20 at 19] (emphasis added). In so arguing, Defendants state that the five demand letters [D.E. 1-5] provided to the Court include the member's name, date of the accident, the procedure and diagnosis codes, and state that the demand is a "Demand Letter Pursuant to Section 627.736, Florida Statutes and MSP Law". Id. at 18. However, a comparison of the demand letters here with those from Zurich shows the letters are nearly identical, with the lone exception being that the demand letters here include a citation to section 627.736. Compare Demand Letters [D.E. 1-5] with Zurich Demand Letters, [Case No. 23-cv-22450, D.E. 1-3]. The demand letters here and those from Zurich contain the self-styled subject line "Demand Letter", cite to the MSP Act, state a specific amount owed, and provide a date of loss, case reference number, and a redacted beneficiary name. Id. However, as in Zurich, Plaintiffs have not sued to recover on any of these demand letters. Instead, "Plaintiffs merely seek a declaration of Defendants' obligations and information that may be used to later bring a lawsuit against unspecified defendants for an unspecified sum" and "do not specify which Plaintiffs or which demand letters will be involved in potential lawsuits." MSP Recovery Claims, Series LLC et al. v. Hartford Accident and Indem. Co. et al., Case No. 23-cv-22244 (S.D. Fla. Nov. 7, 2023) (slip opinion) (hereafter, "Hartford").[2] "Without such detail, Defendants cannot establish the amount in controversy exceeds the threshold by the preponderance of the evidence: at best, it's rank speculation." Id.

---

[2] Plaintiffs filed a copy of the Hartford opinion with their Notice of Supplemental Authority [D.E. 29-1 at 8].

9

In Hartford, the Court also followed the reasoning from Zurich and concluded that "[t]hough Plaintiffs might use the outcome of their declaratory claim as a basis for a future action that seeks monetary damages, that possibility does not negate the fact that there is no amount in controversy in *this* action." Id. at 9 (emphasis added). "Whether it is one demand letter or 811, Defendants cannot, with reasonable certainty, predict which demand letters or parties will be involved in any future litigation. At this time, the demand letters are merely examples of the claims information Plaintiffs seek." Id.

Similarly, in MSP Recovery Claims, Series LLC et al. v. The Travelers Casualty Co., Case No. 23-cv-23156, (S.D. Fla. Nov. 8, 2023) (slip opinion) (hereafter, "Travelers"),[3] the Court also found that "demand letters do not provide a sufficiently certain basis for calculating damages for the relief Plaintiffs seek" because the "letters provide merely an *example* of the type of claim Plaintiffs are seeking to potentially bring in the future . . . and are not the basis of any specific reimbursement demands in this case". See id. Citing Zurich, the Travelers court reasoned that the demand letters, which are substantially similar to the ones on record in this case [D.E. 1-5], were insufficiently detailed to establish the amount in controversy because the demand letters were not itemized and did not include an itemized bill. Id. at 9–10. The same is true here. See generally Demand Letters [D.E. 1-5]. The Travelers court also reasoned that the mere fact that the letters stated they were formal demands pursuant to Florida Statute Section 627.736 "d[id] not make the letters precise" but were merely included to satisfy the notice requirements of section 627.736. Id. Again, the same holds true here.

---

[3] Plaintiffs filed a copy of the Travelers opinion with their Notice of Supplemental Authority [D.E. 30-1 at 7].

Given the similarities between this case and Zurich, Hartford, and Travelers, the undersigned likewise concludes that diversity jurisdiction and CAFA jurisdiction are lacking here. Id. at 11.[4]

## II. Federal Question Jurisdiction

As previously noted, Defendants also removed the case on the basis of federal question jurisdiction, arguing that Plaintiffs' claim for declaratory relief requires an interpretation of a federal law or regulation, specifically, the MSP Act. See Notice of Removal [D.E. 1 at 17–19]. Plaintiffs argue, however, that federal question jurisdiction is lacking because the SAC does not seek relief under the MSP Act; instead, "[t]his case is only about the parties' rights and obligations under Florida state insurance law" and is therefore, a "quintessential local controversy". See Motion for Remand [D.E. 13 at 12]. Plaintiffs characterize this "local controversy" as "whether and when Secondary Payers must comply with discrete pre-suit notice requirements under the Defendants' written policies and under Florida's No-Fault and PIP law." Id. at 14–15. Defendants counter that Plaintiffs attempt to "defeat removal by omitting to plead necessary federal questions" and that the "obligations of Defendants to coordinate benefits with 'Secondary Pay[e]rs'" raises a substantial question of federal law concerning the MSP Act. See Resp. [D.E. 20 at 15–16] (quoting Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California, 463 U.S. 1, 22 (1983)).

"The test ordinarily applied for determining whether a claim arises under federal law is whether a federal question appears on the face of the plaintiff's well-pleaded complaint." Cmty. State Bank v. Strong, 651 F.3d 1241, 1251 (11th Cir. 2011). Moreover, "the mere presence of a

---

[4] In their Motion for Remand, Plaintiffs also argued that Defendants' Notice of Removal was untimely because the action was removed more than one year from the time the lawsuit was filed. See Motion for Remand [D.E. 13 at 11]. However, the undersigned's conclusion that Defendants fail to meet the threshold amount in controversy for diversity jurisdiction renders this argument moot.

11

federal issue in a state cause of action does not automatically confer federal-question jurisdiction." Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 813 (1986).  For a state law claim to raise a substantial federal question and, in turn, trigger federal question jurisdiction, the federal issue must be "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." Gunn v. Minton, 568 U.S. 251, 258 (2013).  These requirements are not met here.

In the SAC, Plaintiffs only claim a right to relief under Florida Statutes Sections 627.736 (4), (5), and (10).  See SAC [D.E. 1-2 at 24–30].  Thus, there is no basis for Defendants' argument in their Response that Plaintiffs are seeking relief under the MSP Act's private cause of action and that their claim for declaratory relief turns on an interpretation of the MSP Act.  See Resp. [D.E. 20 at 15].  Instead, the basis of Plaintiffs' claim for declaratory relief is whether Florida law imposes certain obligations on Defendants based on their potential role as Primary Payers under Florida's Motor Vehicle No-Fault Law, Section 627.736(4), and whether Plaintiffs must comply with reimbursement requirements under Florida's PIP Statute, Sections 627.736(5) and (10).  See SAC [D.E. 1-2 at 31–32].  Thus, the SAC does not raise an actually disputed and substantial federal issue.  See Gunn, 568 at 258.

Defendants, nevertheless, contend that the coordination of benefits with Secondary Payers implicates a substantial federal question under the MSP Act because the coordination of benefits requires an interpretation of federal regulations under the MSP Act.  See Resp. [D.E. 20 at 15–16]. However, this argument has already been rejected by at least one court in this District.  In Travelers, the court determined that this argument was better raised as a defense only after the state court has addressed the plaintiffs' state law claims.  See Travelers, Plfs.' Notice of Suppl. Auth. [D.E. 30-1 at 13].  As explained by the Travelers court, at best, there was only in that case a

12

"conditional connection" to the MSP Act which, of course, fails the test that a federal issue be "necessarily raised," "actually disputed" and "substantial" to invoke federal question jurisdiction. Id. at 14; Gunn, 568 U.S. at 258. The same circumstances hold true here.

Defendants also argue that Plaintiffs have artfully tried to avoid federal question jurisdiction by omitting to plead necessary federal questions. See Resp. [D.E. 20 at 15]. This argument is also devoid of merit. It is well-settled that "the party who brings a suit is master to decide what law he will rely upon" and thus control the removability of the case. Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 25 (1913); Great North R. Co. v. Alexander, 246 U.S. 276, 282 (1918) ("The plaintiff may by the allegations of his complaint determine the status with respect to removability of a case."). Moreover, "a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987). Plaintiffs' well-pleaded SAC seeks a declaration of the parties' rights and obligations exclusively under Florida law; and seeks no relief under the MSP Act. Therefore, under the well-pleaded complaint rule, the Court does not have federal question jurisdiction over this case. See Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987) (a plaintiff "may avoid federal jurisdiction by exclusive reliance on state law.").

In light of the foregoing, the only possible basis for establishing federal question jurisdiction would be complete preemption, which occurs when "Congress . . . so completely pre-empt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." Taylor, 481 U.S. at 63–64. Defendants have not argued that there is complete preemption here for a good reason, given that the Eleventh Circuit recently ruled that "[t]he Medicare Secondary Payer Act does not expressly preempt section 627.736 (10)(a) [Florida's PIP Statute]." MSP Recovery Claims, Series LLC v. United Auto. Ins. Co., 60 F.4th

1314, 1322 (11th Cir. 2023). The Eleventh Circuit explained that it had "no reason to conclude from the text of the Act that Congress's purpose in shifting primary-payer responsibility to private insurers to 'curb the rising costs of Medicare' . . . included preempting state procedural laws governing insurance liability." Id. Thus, preemption does not apply to Plaintiffs' state law claims.

Accordingly, the Court also lacks federal question jurisdiction.

Having concluded that none of the grounds for removal relied upon by Defendants apply, the undersigned respectfully recommends that the case be remanded to the State Court.

### III. Attorney's Fees and Costs

As previously noted, Plaintiffs seek an award of fees and costs based on improper removal as provided by 28 U.S.C. § 1447(c). However, such an award would require a finding that Defendants "lacked an objectively reasonable basis for seeking removal." Martin, 546 U.S. at 141. "Conversely, where an objectively reasonable basis exists, fees [and costs] should be denied." Id. Here, the extended jurisdictional analysis required to resolve Plaintiffs' Motion for Remand militates against a finding that Defendants lacked an objectively reasonable basis for filing their Notice of Removal. Therefore, the undersigned respectfully recommends that Plaintiffs' request for attorney's fees and costs be denied.

### CONCLUSION

Based on the foregoing considerations, it is RESPECTFULLY RECOMMENDED that: Plaintiffs' Motion for Remand be GRANTED and that the case be REMANDED to the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County. The undersigned further RESPECTFULLY RECOMMENDS that Plaintiffs' request for an award of attorney's fees and costs incurred in connection with the Motion for Remand be DENIED.

Pursuant to Local Magistrate Judge Rule 4(b), the parties have **fourteen days** from the date

of this Report and Recommendation to file written objections, if any, with the Honorable Beth Bloom, United States District Judge.  Failure to file timely objections may bar the parties from attacking the factual findings contained herein on appeal.  See Resolution Tr. Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).  Further, "failure to object in accordance with the provisions of [28 U.S.C.] § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions."  See 11th Cir. R. 3-1 (I.O.P. - 3).

      RESPECTFULLY SUBMITTED this 16th day of November, 2023.

                                                                ALICIA M. OTAZO-REYES
                                                                UNITED STATES MAGISTRATE JUDGE

cc:     United States District Judge Beth Bloom
           Counsel of Record